UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

RICHARD B. JR.,

                                   Plaintiff,

    - v -                                               Civ. No. 5:18-CV-0955
                                                                    (DJS)

ANDREW SAUL, *Comm'r of Soc. Sec.*,[1]

                                   Defendant.

| APPEARANCES: | OF COUNSEL: |
|---|---|
| OLINSKY LAW GROUP<br>Counsel for Plaintiff<br>250 South Clinton Street<br>1500 East Main Street<br>Endicott, New York 13761 | HOWARD D. OLINSKY, ESQ. |
| U.S. SOCIAL SECURITY ADMIN.<br>OFFICE OF REG'L GENERAL COUNSEL<br> - REGION II<br>Counsel for Defendant<br>26 Federal Plaza, Room 3904<br>New York, New York 10278 | JOSHUA L. KERSHNER, ESQ. |

**DANIEL J. STEWART**
**United States Magistrate Judge**

## DECISION AND ORDER[2]

    In this Social Security action, filed by Richard B. Jr. against the Commissioner of Social Security pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), Plaintiff and Defendant

---

[1] Andrew M. Saul became the Commissioner of Social Security on June 17, 2019. The Clerk of Court is respectfully directed to amend the caption.

[2] Upon Plaintiff's consent, the United States' general consent, and in accordance with this District's General Order 18, this matter has been referred to the undersigned to exercise full jurisdiction pursuant to 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73. *See* Dkt. No. 5 & General Order 18.

1

have Moved for Judgment on the Pleadings. Dkt. Nos. 9 & 16. For the reasons set forth below, Plaintiff's Motion is **granted,** Defendant's Motion is **denied**, and the case is remanded for further proceedings.

## I.  RELEVANT BACKGROUND

### A.  Factual Background

Plaintiff was born on September 9, 1968. Dkt. No. 8, Admin. Tr. ("Tr."), p. 21. Plaintiff reported completing high school. Tr. at p. 169. He has past work experience in heating and air conditioning installation (HVAC). Tr. at p. 198. Plaintiff alleges disability due to chronic obstructive pulmonary disease ("COPD"), depression/anxiety, and carpal tunnel syndrome with right trigger finger release. Tr. at pp. 17 & 59.

### B.  Procedural History

Plaintiff filed for benefits in 2014, alleging disability beginning May 16, 2012. Tr. at p. 15. Plaintiff was denied benefits, and after holding a hearing, on June 23, 2017, Administrative Law Judge ("ALJ") Bruce S. Fein found Plaintiff was not disabled. Tr. at pp. 15-23. After the Appeals Council denied Plaintiff's request for review of the determination, Tr. at pp. 1-3, thus rendering the ALJ's decision the final decision of the Commissioner, Plaintiff commenced an action in this Court. Dkt. No.1, Compl.

### C.  The ALJ's Decision

In his decision, the ALJ made the following findings of fact and conclusions of law. First, the ALJ found that Plaintiff last met the insured status requirements of the Social Security Act on March 31, 2016. Tr. at p. 17. The ALJ next found Plaintiff did

2

not engage in substantial gainful activity during the period from his alleged onset date of May 16, 2012 through his date last insured of March 31, 2016. *Id.* The ALJ found that through the date last insured, Plaintiff had the following severe impairments: COPD and post right trigger finger release. *Id.* The ALJ further determined that Plaintiff's complaints of depression and anxiety were non-severe, though medically determinable. Tr. at p. 18. The ALJ determined that through the date last insured, Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1. Tr. at p. 19. The ALJ concluded that through the date last insured Plaintiff had the residual functional capacity ("RFC") to perform light work as defined in 20 CFR 404.1567(b) with the following limitations:

> The claimant was unable to climb ladders/ropes/scaffolds, and he could only perform other postural activities occasionally. The claimant was limited to frequent handling with his right hand. Finally, the claimant could not have more than moderate exposure to fumes, odors, dust, gases, wetness, humidity or temperature extremes.

*Id.*

Next, the ALJ determined that through the date last insured, Plaintiff was unable to perform any past relevant work. Tr. at p. 21. The ALJ found that Plaintiff was born on September 9, 1968 and was 47 years old on the date last insured, and thus a "younger person" under the statute, has at least a GED and is able to communicate in English. *Id.* The ALJ found that transferability of job skills is not material to the determination of disability because, using the Medical-Vocational Rules as a framework, the claimant is "not disabled" whether or not the claimant has transferable job skills. *Id.* The ALJ then

3

determined that, through the date last insured, considering Plaintiff's age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that Plaintiff could perform, and that Plaintiff was not under a disability as that term is defined by the Social Security Act, at any time from the alleged onset date through the date last insured. Tr. at pp. 21-23.

## D. The Parties' Positions

In his Brief, Plaintiff contends that the ALJ, in assessing the RFC, failed to adequately address Plaintiff's limitations with his hands and lower extremities. Dkt. No. 9, Pl.'s Brief at pp. 9-14. Plaintiff notes a conflict between the opinion of his treating physician, Dr. Patel, who felt that Plaintiff was limited to occasional use of the hands and reaching and that he could only occasionally lift up to 10 pounds, and the opinion of the consultative examiner, Dr. Ganesh, who opined no gross limitations in the upper extremities, lifting or standing. *Id.* at p. 12. Plaintiff argues that Dr. Ganesh's consultative opinion does not satisfactorily outweigh Dr. Patel's treating opinion. *Id.* at p. 13.

Next, Plaintiff argues that the ALJ erred in not addressing, as part of the RFC, Plaintiff's mild mental limitation in maintaining concentration, persistence, and pace. *Id.* at pp. 14-15. Finally, Plaintiff asserts that, in light of the issues identified above, the ALJ's step five analysis requires a remand. *Id.* at pp. 15-16.

In response, Defendant argues that the ALJ properly gave the consultative examiner's opinion great weight because it was consistent with her physical examination as well as the other substantial evidence in the record. Dkt. No. 15, Def.'s Brief, p. 7.

4

Defendant also maintains that the ALJ was correct in discounting the findings of Dr. Patel, rendered a year after Plaintiff's date last insured, as he based the opinion on a litany of unsupported diagnoses and impairments beyond the COPD and trigger finger issues that were supported by the record. *Id*. at pp. 7-9. Defendant also notes that the ALJ did incorporate elements of Dr. Patel's opinion in the RFC by limiting Plaintiff to a subset of light work; to only frequently handle items with his right hand; to only occasional postural activities; and to avoid exposure to respiratory irritants. *Id.* at pp. 9-10. With regard to Plaintiff's claims regarding limitations in his lower extremities, Defendant contends that the record indicates that Plaintiff's leg "ulcers" were treated with a compression wrap and had healed. *Id.* at p. 12.

As to Plaintiff's alleged mental impairments, Defendant points out that Plaintiff's own treating physician, Dr. Downing, reported that Plaintiff had no impairments of attention or concentration, and that consultative examiner Dr. Shapiro did not report any mental limitations. *Id.* at p. 13. Defendant asserts that the ALJ's finding of mild limitations in concentration, persistence, and pace, do not warrant any change in the RFC, and the legal authority relied upon by Plaintiff is clearly distinguishable as it relates to moderate mental limitations, not mild ones, as in the case at bar. *Id.* at p. 14. Finally, Defendant argues that the ALJ's step five determination is supported by substantial evidence. *Id*. at p. 15.

## II.  RELEVANT LEGAL STANDARD

### A.  Standard of Review

A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled.  42 U.S.C. § 405(g); *Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990).  Rather, the Commissioner's determination will be reversed only if the correct legal standards were not applied, or it was not supported by substantial evidence.  *See Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); *accord Grey v. Heckler*, 721 F.2d 41, 46 (2d Cir. 1983); *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979).  "Substantial evidence" is evidence that amounts to "more than a mere scintilla," and has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Richardson v. Perales*, 402 U.S. 389, 401 (1971).  Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld.  *Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

"To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight."  *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988).

If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a *de novo* review." *Valente v. Sec'y of Health & Human Servs.*, 733 F.2d 1037, 1041 (2d Cir. 1984).

### B. Standard to Determine Disability

The Commissioner has established a five-step evaluation process to determine whether an individual is disabled as defined by the Social Security Act. 20 C.F.R. §§ 404.1520 & 416.920. The Supreme Court has recognized the validity of this sequential evaluation process. *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987). The five-step process is as follows:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines

whether there is other work which the claimant could perform. Under the cases previously discussed, the claimant bears the burden of the proof as to the first four steps, while the [Commissioner] must prove the final one.

*Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982); *accord McIntyre v. Colvin,* 758 F.3d 146, 150 (2d Cir. 2014). "If at any step a finding of disability or non-disability can be made, the SSA will not review the claim further." *Barnhart v. Thompson,* 540 U.S. 20, 24 (2003).

## III. ANALYSIS

### A. Mental Impairment

Turning first to the issue of Plaintiff's depression and anxiety, Plaintiff argues that the ALJ failed to adequately account for what the ALJ himself concluded was a mild limitation in maintaining concentration, persistence, and pace. Tr. at p. 18; Pl.'s Brief at pp. 14-15. The ALJ noted that Plaintiff's depression and anxiety, considered either separately or in combination, did not cause more than a minimal limitation in the claimant's ability to perform basic mental activities. Tr. at p. 18. When the ALJ crafted Plaintiff's residual functional capacity, he did not explicitly specify any limitation for any mental impairment. Tr. at p. 19. Plaintiff maintains that this is error which requires the matter to be remanded for reconsideration. Pl.'s Brief at p. 15.

An ALJ is required to consider non-severe impairments in determining the RFC. 20 C.F.R. § 404.1545(a)(2) ("We will consider all of your medically determinable impairments of which we are aware, including your medically determinable impairments that are not 'severe' . . . when we assess your residual functional capacity."). In his determination of Plaintiff's RFC, the ALJ did specifically discuss Plaintiff's mental

8

impairments or lack thereof, writing "the claimant has received little or no mental health treatment, and there is no evidence that a mental impairment has limited him in any way." Tr. at p. 20. The ALJ did address Plaintiff's mental impairments in considering his RFC, as required.

This determination was supported by substantial evidence. In his Function Report, Plaintiff himself noted that he did not have any problems paying attention and that he was able to finish projects or chores that he started. Tr. at p. 183. During Plaintiff's hearing testimony there was no mention of any limitations caused by his depression and/or anxiety. Tr. at pp. 32-54. Medical records from Dr. Downing, who was treating Plaintiff for his COPD, noted that Plaintiff had reported anxiety, but depression, memory loss, or mood changes were not present. Tr. at p. 294. Dr. Downing's neurological assessment at the time was that Plaintiff had normal thought content and perception and, regarding his cognitive function, he had no impairment of attention or concentration. Tr. at p. 295.

Dr. Patel treated Plaintiff for a substantial period of time. His neurological assessment was that Plaintiff was alert and oriented times three and had no focal deficits. Tr. at p. 318. His September 4, 2014 assessment of Plaintiff included neither anxiety nor depression, noting within the treatment note that his anxiety and depression were under control. Tr. at pp. 318-319. In July 2014, Plaintiff specifically denied any psychological symptoms, indicated that "his nerves are good" and the doctor again noticed no focal deficits. Tr. at pp. 322-324.

On October 2, 2014, Plaintiff was seen for a psychiatric examination performed by Dr. Jeanne Shapiro. Tr. at pp. 413-417. During the examination Plaintiff did not report

9

any significant depressive, manic, or anxiety-related symptoms, and noted that his inability to work stemmed from his COPD. Tr. at pp. 413-414. His cognitive functioning was found to be in the average range; his attention and concentration were intact; and his thought process was coherent and goal-directed with no evidence of delusions, hallucinations, or disordered thinking. Tr. at p. 415. Dr. Shapiro's medical source statement was as follows:

> Vocationally, the claimant appears to have *no* limitations in understanding and following simple instructions and directions. He appears to have *no* limitations performing simple tasks. He appears to have *no* limitations performing complex tasks. He appears to have *no* limitations maintaining attention and concentration for tasks. He appears to have *no* limitations regarding his ability to attend to a routine and maintain a schedule. He appears to have *no* limitations regarding his ability to learn new tasks. He appears to have *no* limitations regarding his ability to make appropriate decisions. He appears to be able to relate to and interact well with others. There appear to be *no* limitations regarding his ability to deal with stress.

Tr. at p. 416 (emphasis supplied).

In light of the foregoing, it is not evident to the Court that Plaintiff's mild depressive or anxiety-related issues had any more than a *de minimis* effect upon the work the ALJ determined the Plaintiff could perform; namely, a full range of light work.

As Defendant notes, even if the ALJ had limited Plaintiff to unskilled light work, which would be consistent with mild impairments in concentration, persistence, and pace, he would still not be found disabled pursuant to Medical-Vocational Rule 202.20. *See McIntyre v. Colvin*, 758 F.3d at 152 (finding no reversible error where the medical evidence demonstrated that the claimant could engage in simple, routine tasks or unskilled work despite moderate limitations in concentration, persistence, and pace, and where the

10

hypothetical presented to the vocational expert was limited to unskilled work which accounted for the claimant's limitations); *Natashia R. v. Berryhill*, 2019 WL 1260049, at *12 (N.D.N.Y. Mar. 19, 2019) (noting that "[C]ourts [in the Second Circuit] have routinely held that individuals suffering from 'moderate' difficulties with memory, concentration, and handling stress could reasonably be found to have the residual functional capacity to perform simple, routine and repetitive tasks" and collecting cases) (internal quotation marks omitted). Therefore, no error is found in how the ALJ dealt with Plaintiff's mild issues of depression and anxiety.

### B. Treating Physician Rule

The remaining question for the Court is a straightforward one: did ALJ Fein provide sufficient reasons in his decision to justify giving little weight to the March 30, 2017 medical source statement of Dr. Patel, Plaintiff's treating physician, specifically as it relates to the hand and upper extremity limitations alleged by Plaintiff? As to that specific question, the Court finds that remand is necessary.

The Second Circuit has long recognized the "treating physician rule" set out in 20 C.F.R. § 404.1527(c). "[T]he opinion of a claimant's treating physician as to the nature and severity of the impairment is given controlling weight so long as it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the case record." *Greek v. Colvin*, 802 F.3d 370, 375 (2d Cir. 2015) (quoting *Burgess v. Astrue*, 537 F.3d 117, 128 (2d Cir. 2008) & 20 C.F.R. § 404.1527(c)(2)) (internal quotation marks omitted). However, there are situations where the treating physician's opinion is not entitled to controlling weight, in

which case the ALJ must "explicitly consider, inter alia: (1) the frequency, length, nature, and extent of treatment; (2) the amount of medical evidence supporting the opinion; (3) the consistency of the opinion with the remaining medical evidence; and, (4) whether the physician is a specialist." *Greek v. Colvin*, 802 F.3d at 375 (internal quotation marks omitted) (quoting *Selian v. Astrue*, 708 F.3d 409, 418 (2d Cir. 2013)).

After considering these factors, "the ALJ must 'comprehensively set forth [his] reasons for the weight assigned to a treating physician's opinion.'" *Greek v. Colvin*, 802 F.3d at 375 (quoting *Burgess v. Astrue*, 537 F.3d at 129). The ALJ must give "good reasons for not crediting the opinion." *Greek v. Colvin*, 802 F.3d at 375 (internal quotation marks omitted) (quoting *Burgess v. Astrue*, 537 F.3d at 129-30). Plaintiff contends the ALJ improperly gave the treating physician's opinion less than controlling weight without performing the requisite analysis. Pl.'s Brief at p. 13.

Dr. Patel has treated Plaintiff for a significant period of time. Tr. at p. 765. His medical source statement purports to relate back to Plaintiff's status as of May 16, 2012, the date of first onset. Tr. at p. 769. The medical source statement lists severe limitations caused by a host of medical issues, including high blood pressure, COPD, non-toxic single thyroid nodule, DVT with a leg ulcer, long-term use of anticoagulant, nicotine addiction, allergic rhinitis, and numbness in the hand. Tr. at p. 765; *see also* Tr. at p. 773. According to Dr. Patel, Plaintiff was limited during the relevant time period to sitting and standing for no more than an hour at a time, and no more than two hours in an eight hour day; Plaintiff could rarely lift more than 10 pounds; and Plaintiff would be off task more

12

than 20% of the day. Tr. at pp. 766-767. At this level of restriction, Plaintiff could not be expected to perform work under the ALJ's RFC.

Initially, it is noted that while the administrative record does contain the extensive treatment records of Dr. Patel, Tr. at pp. 259-267, 307-407, the ALJ does not specifically note in the body of his decision Dr. Patel's role as Plaintiff's treating physician. Tr. at pp. 20-21. There is thus no explicit consideration of the treating physician rule in the ALJ's opinion. For example, the ALJ does not specifically address the treatment records of Dr. Patel, and generally limits his analysis to Dr. Patel's Medical Source Statement which was generated on March 30, 2017. *Id.* The ALJ's failure to evaluate Dr. Patel's opinion in the context of his role as a treating physician is error warranting remand.

The Second Circuit has made clear that ALJs "must explicitly consider" each of the relevant factors. *Greek v. Colvin*, 802 F.3d at 375. In this case, the ALJ did not do so. The failure to even discuss Dr. Patel's role as a treating physician alone is a basis for remand. *Ferraro v. Saul*, ___ Fed. Appx. ____, 2020 WL 1189399, at *2 (2d Cir. Mar. 12, 2020) (directing remand when the ALJ did not "explicitly consider . . . the frequency, length, nature, and extent of treatment"). The ALJ also did not specifically address the evidence in Plaintiff's medical records that was consistent with and supported Dr. Patel's opinion.

An error in weighing a physician's opinion may be considered harmless where proper consideration of that opinion would not change the outcome of the claim. *Cottrell v. Colvin*, 206 F. Supp. 3d 804, 810 (W.D.N.Y. 2016) (citing *Zabala v. Astrue*, 595 F.3d 402, 409 (2d Cir. 2010)); *Camarata v. Colvin*, 2015 WL 4598811, at *16 (N.D.N.Y. July

13

29, 2015) (denying the request for remand because application of the correct legal standard would not change the outcome). Here, however, relevant factors, including the frequency, length, nature and extent of treatment and the consistency of the opinion with the medical records were not meaningfully analyzed. Such an error cannot be deemed harmless when proper application of the treating physician rule may have led to a different conclusion. *Schall v. Apfel*, 134 F.3d 496, 504-05 (2d Cir. 1998) (ALJ's failure to adhere to the Regulations regarding the weight to be given to the opinion of a treating physician was not harmless, in part because "application of the correct legal standard does not lead inexorably to a single conclusion"); *Burgess v. Colvin*, 2016 WL 7339925, at *13 (S.D.N.Y. Dec. 19, 2016) (error not harmless and remand warranted when ALJ provided only "minimal discussion" of treating physician factors).[3]

### IV. CONCLUSION

For the reasons stated herein, it is hereby

**ORDERED**, that Plaintiff's Motion for Judgment on the Pleadings (Dkt. No. 9) is **GRANTED**; and it is further

**ORDERED**, that Defendant's Motion for Judgment on the Pleadings (Dkt. No. 16) is **DENIED**; and it is further

**ORDERED**, that Defendant's decision denying Plaintiff disability benefits is **VACATED** and **REMANDED** pursuant to Sentence Four of section 405(g) for further proceedings; and it is further

---

[3] Reconsideration of the relevant medical evidence may necessarily result in a new RFC determination which, in turn, would affect the step five analysis. The Court, therefore, directs the ALJ to address this matter on remand.

**ORDERED**, that the Clerk of the Court serve a copy of this Decision and Order upon the parties to this action.

Date:  March 23, 2020
       Albany, New York

_____
Daniel J. Stewart
U.S. Magistrate Judge